TRULINCS 67662054 - LASHER, LENA - Unit: DAN-O-A

----------------------------------------------------------------------------------------------------

US District Courthouse Southern District of New York          10/19/2017
500 Pearl St.
NY, NY 10007

Dear Clerk of the Court,

    My name is Lena Lasher. My case number is:  S1  12  Cr. 868 (NRB)  Judge Naomi Buchwald

    The Government's response to my 2255 Motion was due on September 22, 2017. However, I did not receive their response until 9/28/2017.

    The Prison had a few lockdowns: Tues 10/3/17 night, and again from 10/5/17 to 10/10/17 morning. Due to the unseen event not under my control, I was still able to timely submit my Rebuttal to the Government on 10/13/2017 legal mail (this was documented via the outgoing legal mail log of the Bureau of Prisons), certified mail, and return receipt to the Court; A duplicate was also sent to AUSA Attorney Margaret Garnett on 10/13/2017.

    Today, 10/19/2017, I am legal mailing you a duplicate of my Motion for Rebuttal to Government's Memorandum of Law of the United States of America in Opposition to the Motion of Lena Lasher Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Her Sentence and in Opposition to Her Supplementary Motions, its Motion Information Statement, and Certificate of Service dated 10/13/2017, minus its exhibits due to my lack of fund.

    The motion and affidavit to proceed informa pauperis is on file with the court; I am, again, requesting a court - appointed attorney to help me with these matters, since the Government framed me; I can prove it with the suppressed video recording (exculpatory evidence).

    I am also requesting the return of my passport, since I will be released shortly. Please return my passport or send me whatever form I need to fill out to obtain it.

    Thank you very much.

Sincerely,   Lena Lasher

Lena Lasher, Pro-se
Register # 67662-054
Federal Correctional Institution
33 & 1/2 Pembroke Road
Danbury, CT  06811-3099

US District Courthouse
500 Pearl ST
NEW YORK, NY 10007
United States

MOTION INFORMATION STATEMENT

Docket Number(s): __S5   12 Cn. 868 (NRB)__                Caption [use short title]

Motion for: _of Law of the United States of America in Opposition to the Motion of Lena Lashen Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Her Sentence and in Opposition to her Supplementary Motions_

Rebuttal to Government's Memorandum

Set forth below precise, complete statement of relief sought:

Motion for Rebuttal to Government's Memorandum of Law of the United States of America in Opposition to the Motion of Lena Lashen Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Her Sentence and in Opposition to her Supplementary Motions

United   States

v.

Lena  Lashen

MOVING PARTY: Panty  Lena  Lashen          OPPOSING PARTY: United States of America
☐ Plaintiff          ☐ Defendant
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Panty  Lena Lashen          OPPOSING ATTORNEY: _____
                    [name of attorney, with firm, address, phone number and e-mail]

Lena Lashen   Register # 67662-054

Federal Correctional Institution

33 ½ Pembroke Rd. Danbury, CT 06811-3099

Margaret Garnett
US Attorney's Office
1 Saint Andrews PLZ
NEW YORK, NY 10007
United States

Court-Judge/Agency appealed from: Southern District of New York/Honorable Judge

Please check appropriate boxes:                    FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                    INJUNCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):   Has request for relief been made below?        ☐ Yes ☐ No
☑ Yes ☐ No (explain):_____             Has this relief been previously sought in this Court?   ☐ Yes ☐ No
                                                    Requested return date and explanation of emergency:_____
Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response?
☐ Yes ☐ No ☑ Don't Know

Is oral argument on motion requested?   ☑ Yes ☐ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☐ No  If yes, enter date:_____

Signature of Moving Attorney: Panty
lena lashen        Date: 10|13|2017   Service by: ☐ CM/ECF  ☑ Other [Attach proof of service]

Form T-1080 (rev. 12-13)



# UNITED STATES COURT OF DISTRICT  FOR THE SECOND CIRCUIT

CAPTION:

United States of America

**CERTIFICATE OF SERVICE\***

Docket Number: S5  12 Cr.868(NRB)

v.

Lena Lasher

I, __Lena Lasher__, hereby certify under penalty of perjury that
(print name)
Motion for Rebuttal to Government
on __October 13, 2017__, I served a copy of __Memorandum of Law of the United__
(date) Opposition to the Motion of Lena Lasher Under 28 U.S.C. §2255 To
States of America in
Vacate, Set Aside, Or Correct Her Sentence and in Opposition to her Supplementary Motions
And its Exhibits A-Z, 1-9 (list all documents)
by (select all applicable)\*\*

___ Personal Delivery        √ United States Mail        ___ Federal Express or other
                                                              Overnight Courier

___ Commercial Carrier        ___ E-Mail (on consent)

on the following parties:

⇔67662-054⇔
Margaret Garnett
US Attorney's Office
1 Saint Andrews PLZ
NEW YORK, NY 10007
United States

| Name | Address |  |  |  |
|------|---------|--|--|--|
| Name | Address |  |  |  |

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |

\*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

\*\*If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

__10/13/2017__
**Today's Date**

Lena Lasher
**Signature**

LENA LASHER

v.                                    12 Cr. 868 (NRB)
                                      17 Civ. 5925 (NRB)
UNITED STATES OF AMERICA

REBUTTAL TO GOVERNMENT'S MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN

OPPOSITION TO THE MOTION OF LENA LASHER UNDER 28 U.S.C. 2255 TO VACATE, SET ASIDE,

OR CORRECT HER SENTENCE AND IN OPPOSITION TO HER SUPPLEMENTARY MOTIONS

INTRODUCTION

The Petitioner's conviction was based upon perjured testimony, suppressed and tampered evidence (exculpatory

evidence), planted evidence (drugs and cell phone's photos), and withheld evidence, which were knowingly used by the

prosecution in order to obtain a conviction. Instead of using pharmacy business records (phone records, fax records, emails,

prescription records, employees' write-ups), the best evidence rule, and the governing pharmacy law,

prosecutors/Government used the perjured testimony of their witnesses to contradict the petitioner's testimony, to secure a

wrongful conviction, a denial of Petitioner's due process of law (Mooney v. Holohan, 294 U.S. 103 (1935). Giglio v. U.S. 405

U.S. 150, 154 (1992) Napue, 360 U.S. at 271. The conviction must be due to a violation of law, not due to Government's and

its witnesses made up laws, opinions, and false testimonies.

Currently a Motion to vacate, correct or modify the sentence and/or conviction, is filed with due cause, based on the

constitutional violation of withholding exculpatory evidence that was essential in showing the Petitioner was not present and

did not initiate or cause the criminal offense wrongfully asserted in the criminal case established by the government and it's

conviction. The documentation per the petition is an essential element to show cause as to the perjured testimony of the

government and the government's witnesses. "Prosecutors who knowingly present perjured witness testimony or fail to

correct it violate a defendant's right to a fair trail, the U.S. Court of Appeals for the Third Circuit ruled (Haskell v.

Superintendent Greene SCI, 2017 BL 266640, 3d Cir., No. 15-3427, 8/1/17). "A root is how can a defendant possibly enjoy

his right to a fair trial when the" government "is willing to present (or fails to correct) lies told by its own witness and then

vouches for and relies on that witness's supposed honesty" in its closing argument? Circuit Judge Thomas L. Ambro asked in

writing for the court that tossed a murder conviction Aug. 1 (2017). He answered that question by quoting the U.S. Supreme

Court in Napue v. Illinois. "A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district

attorney has the responsibility and duty to correct what he knows to be false and elicit the truth," he said. (T.1736, 1938-

1941, 1951, 1953, 1861).

Instead of using the video recording to exonerate the Petitioner', the government suppressed the video recordings; thus a

Brady violation has occurred due to the fact the information was suppressed, tampered with, and is exculpatory.

Throughout trial, Petitioner was accused of dispensing "invalid" prescriptions. However, according to the Federal law 21

U.S.C. 353, S2002 legislation (Exh A) and the PA 27 pharmacy governing law (See Exh B), as confirmed by Government expert witness, Catizone(T.1074), the prescriptions were valid; they were valid because they were NON controlled substances and therefore did not require a valid prescription, meaning a face-to-face prescription. Only controlled substances prescription require a valid (face-to-face) prescription, as per the Controlled Substances Act (CSA)  (See Exh C). To emphasize, all the drugs the Petitioner dispensed via the fulfillment ("internet") pharmacy were NON controlled substances, at the time of dispensing. Per the Controlled Substance Act law, Butalbital and Fioricet are two different drugs"

1. "Butalbital" has the potential of being abused and is a controlled substance Schedule III while

2. Fioricet, although has a composition of smaller amounts of butalbital and larger amounts of two other drugs (acetaminophen and caffeine) without the risk of causing addiction, is NOT a controlled substance.

Fioricet, a drug the Petitioner dispensed, is not the same drug as "butalbital" and is not an analog of butalbital.

The Government's Argument 1, stating the 2255 Motion should be denied is incorrect due to Insufficiency Claim which is further incorrect. Lasher shows a multitude of sufficient law and factual accuracy in why the conviction is wrongful and how the government brought forth false allegations and false evidence.

The Government now argues that the prescriptions were invalid because they were not based on "a bonafide physician-patient relationship". However, the Petitioner believes there was a bonafide physician-patient relationship. She did her due diligence in that she made sure:

1. The physicians signed the prescriptions; the petitioner's duty, as a pharmacist, is to dispense medications to the patients because they are in need; this need is determined by the physicians. It is against the HIPAA law for the physicians to reveal patients' personal private information to the Petitioner.

2. Furthermore, the Petitioner, other pharmacists and technicians, called the physicians monthly and were told verbally and via faxes that they phone consulted the patients (phone consultation prescriptions are legal), thus further "validating" a bonafide physician patient relationship. However, at trial, the doctors (Dr. Konakanchi and Dr. Burling) falsely testified that they never spoke to any pharmacist nor faxed any Doctor Survey document to any pharmacy. But the doctors lied; the withheld faxes records (See exh D) discredited their testimonies. In the faxes, Dr. Konakanchi informed the pharmacists/pharmacies by signing off in the Doctor Survey that she phone consulted her patients.  The best evidence rule, faxes, prescriptions and phone records contradicted the doctors testimonies. The Government witnesses deceived the Petitioner into dispensing their prescriptions; the Petitioner should not be held accountable for their lies, deceit and misdeeds. They falsely testified against the Petitioner in "hoping for NO jail time (T.) As in US v. Walter, 2017 BL 303067, 7th Cir., 16-1325 Nos. 16-1209, 8/29/17), Government should've revealed its witness lied. The witness's "testimony was important because of its detailed, firsthand nature, and because it  corroborated what the other witnesses were saying"

about the defendants' involvement in the conspiracy, said Chief Judge Diane P. Wood. Dr. Konakanchi and Dr. Burling's motivation was to secure lenient treatment in exchange for implicating the Petitioner.

The Petitioner is asking the Court- How does a pharmacist formally assess a bonafide physician-Patient relationship? No pharmacist can! The Court held in Johnson v. US that the Armed Career Criminal Acts definition of "violent felony" was so vague as to violate due process. Relying on Johnson, bonafide physician patient relationship was unconstitutionally vague in that:

1. There is no formal assessment for a pharmacist to determine whether there is a bonafide relationship between a physician and his/her patient, that relationship is between them; there is no way for a pharmacist to know if the physician did or did not consult their patients, and/or read the doctor's mind. The signatures on the prescriptions are the physician's promise to the rest of the health care community and the patients, that the prescriptions are valid and that they did their jobs properly.

2. There is no formal assessment for a pharmacist to make sure the physicians phone consulted with the patients when the physician signed off on faxes that she phone consulted the patients.

3. A physician-patient bonafide relationship is between a physician and his patient; in no area is the pharmacist involved in this physician-patient relationship. The word "pharmacist" is not anywhere in the words "bonafide physician patient relationship". The bonafide physician-patient relationship is not between a physician and a pharmacist, or patient and a pharmacist. The Petitioner has no bonafide relationship with them, in regard to that relationship. Also, per pharmacy governing law, as confirmed by the government's expert witness, Catizone, it is a judgment call in the final analysis for the pharmacist, NOT the government to decide whether to fill a prescription (T.1077 - 1078). Thus, Petitioner's conviction should be vacated.

The Petitioner's Certiorari was denied by the Supreme Court on June 12, 2017 and rehearing was denied by the Supreme Court on August 7, 2017. However, "it is important to note that review in this Court by means of a writ of certiorari is not a matter of right, but of judicial discretion." "The Court grants and hears arguments in only about 1% of the cases that are filed each Term." "The denial of a petition for a writ of certiorari signifies only that the Court has chosen not to accept the case for review and does not express the Court's view of the merits of the case."

The Petitioner recently filed three Motions, none of which are frivolous as the Government claimed (Pg. 19-20) due to the Government's prosecutorial misconduct of suppressing exculpatory evidence of video recordings, and 3500 materials of Peter J. Riccio and Dr. Imbernino, planting of evidence on the Petitioner's phone, subpoena of unemployment records and phone records to cooberate the Petitioner's testimonies and contradict those of the Government witnesses. Thus all of these motions are at the Appellate Court, awaiting certificate of appealability. As Marshall Hale of Pennsylvania (2017) who had filed many pro se petitions to discover evidence; he contended that it had been withheld by the Commonwealth; the

Petitioner is also filing pro se petitions to discover evidence she contended had been withheld and planted by the Government. The petitioner asserts she is factually and actually innocent; Mr. Marshall Hale asserted he is innocent. Unfortunately, having served over 33 years for a crime he did not commit, it took him over 33 years to overturn his wrongful conviction. The Petitioner has every right to file motions to overturn her wrongful conviction. The Petitioner is asking the Court: What did the Court do to the Prosecutors' witnesses who testified they committed the "crime" and put the blame on the Petitioner? Absolutely no punishment was imposed! This is in fact a violation of the governing pharmacy law in that another pharmacist can not be responsible for other pharmacists' actions. Each pharmacists is accountable for his/her own actions. Where is justice?

This case is about being framed by the Government; yet the Government is blaming the Petitioner for fighting back, criticizing her for discovering suppressed evidence via FOIA, criticizing her for filing civil lawsuit against millionaires and those who forged her signatures as owner of the pharmacies; all of this is the Petitioner's constitutional right as she fights for justice. Again, the Government is attacking the messenger, the victim, for exposing the truth.

According to FOA/PA's letter of 7/11/2017 (See Exh H) "any seized video recordings would have been turned over in discovery to the AUSA (SDNY). As of today, 9 (nine) DVDs remain suppressed. As to date, 3500 materials of co-conspirators Peter J. Riccio and Dr. Imbernino are still suppressed.

Counsel's errors is a deprivation of the Petitioner's life, liberty and pursuit of happiness.

ARGUMENT:

I.  LASHER'S 2255 MOTION SHOULD BE GRANTED

A. Lasher's Insufficiency Claim is with MERIT:

LACK OF FAIR NOTICE/ERROR of LAW:

Many Government's assertions are that the Petitioner can not relitigate issues that were raised in direct appeal using U.S. v Perez 129 F.3d 255 260 whereby a case is determined based on the aspect of obtaining knowledge regarding the government's misbehaviors, suppressions, misrepresentations and falsely creating fraudulent evidence through witnesses and material alterations, post conviction information obtained allows the Petitioner to raise these claims:

. Petitioner's bond and direct appeal was incorrectly denied by the circuit court in that counsels were ineffective by not raising the issue that butalbital was never dispensed. The Petitioner should not be penalized for counsels' error. This issue, in fact, was raised via many phone calls, emails (See Exh E), and meetings to counsel. Yet, throughout trial, counsel allowed the Government to deceive the jury by lying to them that the drugs the Petitioner dispensed via the fulfillment pharmacy were "highly addictive pain medications" (T.1768) (words made up by the prosecutors to mislead the jury). However, none were; none were controlled substances and none were pain medications, as the Government asserts without back up of any pharmacy references. In fact, no drug can legally be called "addictive pain medications, as per the law (CSA)

Fioricet, a drug the Petitioner dispensed, is not the same drug as "butalbital" and is not an analog of butalbital, but a composition of smaller amounts of butalbital and larger amounts of two other drugs (acetaminophen and caffeine) without the risk of causing addiction. According to the DEA exempt prescriptions products list (See Exh E of 2255 Motion), Fioricet is exempt from scheduling even though it contains butalbital. To clarify, Fioricet is not a controlled substance, but butalbital is. On April 18, 2005, the PIC question of the week in detail discussed why Fioricet is not considered a controlled substance (See Exh F). There was and is a conflict with the Government and the Judge's description of the actual subject medication dispensed (Butalbital v. Fioricet). The Petitioner rightfully alleges this was not by accident, and the mislabeling of the medication as Butalbital was purposeful and disingenuous because it is known that Fioricet would not fit the crime as charged.

Fioricet is classified as a regular prescription drug; it is in the same class as blood pressure, diabetes, and prescriptions vitamins, etc... Fioricet is used to treat tension headache while Butalbital, a powder, is used to treat insomnia. Thus, 2 different drugs, 2 different treatments. Fioricet is not even in a pain drug category.

Although the petitioner was indicted for misbranding, the Government committed fraud against her by presenting lies and misleading evidence to the jury. The jury did not know that the indictment was for butalbital, not Fioricet. The jury was NEVER told that Fioricet and butalbital were TWO different drugs and that Fioricet was NOT a controlled substances NOR a "highly addicted pain medications, as the Government asserted. In the Indictment, the Grand Jury Charges: "I ordered 90 tablets of butalbital...I received a package that contained 93 tablets of butalbital. (Bates 0000296). NO one could have received butalbital because it was never stocked in the pharmacy.

In light of Bain v. US 30 LEd 849, 3/28/1887, the Government wrongfully convicted the Petitioner with a defective indictment by using a bait and switch tactic to indict the Petitioner for a controlled substance drug, butalbital, a drug the Petitioner never handled, the pharmacy never carried, the physician never prescribed, and the wholesaler never sent, for a NON controlled substance drug Fioricet. As stated by Judge Buchwald, "The central issue in the trial as articulated by the defendant was whether the defendant acted in good faith. (See, e.g., Tr. 50: 16-17)." This ruling and testimony is in direct contradiction of the:

1. Controlled Substances Act law (CSA - Controlled Substances Act) describes that Butalbital and Fioricet are two different drugs, one in whole having the potential of being abused (Butalbital) and the other not (Fioricet).

2. Controlled Substances List (See Exh B of 2255 Motion) showed that Fioricet is not on the Controlled Substances Act nor on the Controlled Substances List, thus not displaying, Fioricet, as having any addictive attributes, as a drug in whole, despite its inclusion of Butalbital.

3. Scheduling Actions - the Scheduling Actions state the proposal publication and effective date that a drug becomes a controlled substances. However, both Butalbital and Fioricet are not even on the Scheduling Actions. Where is the FAIR

WARNING that Fioricet is the same as Butalbital? There is none because Fioricet is not the same as Butalbital. See Carl Olsen vs. Eric Holder 610 F. Supp.2 985; 2009 U.S. Dist. LEXIS 35300, See US v. Kevin Lamont Brewer 766F.3d 884; 2014 U.S. App. LEXIS 17454 No. 13-1261 (8th Circuit 9/10/14).

Although the Petitioner's Motion to dismiss the Indictment was not granted by the Court, it was withdrawn by the Government because the Government knew Lasher was correct about the legal status of Fioricet in that it is NOT a controlled substances.

Petitioner's bail pending appeal, and the probability the direct appeal would have been granted if the Appellate Court had the opportunity to read her Recall the Mandate (See Exh G). However, the Appellate Court Clerk denied the timely filed Recall the Mandate on 12/2/16 without even seeing it (it was due on 11/30/2016, postmarked on 11/29/16, denied on 12/1/16, received at second circuit on 12/2/16). Based on prison law mailing it should have been accepted.

The lab report, as the Government mentioned (Pg. 3 - Govt Exhibit "GX" 103, 6006) was misleading in that it only showed butalbital in its report; it did not show the other 2 active ingredients (acetaminophen and caffeine) in Fioricet. However, the lab reports did not show the drug was tampered with, adulterated, expired, or even misbranded, because they were not. Therefore the government continued to misrepresent the "butalbital" as the controlled substance "butalbital" that was not stocked in the pharmacy and was never issued as they asserted and charged.

B. LASHER'S DUE PROCESS CLAIM IS OF MERIT

The Government again wrongfully asserts that they "satisfied it's discovery obligations by identifying and making such material available to Lasher" (Pg. 4 Para 1, sent. 4-5). This claim again is a misrepresentation to the Court which is clearly definable based on the Exhibits (See Exh judge denial, Exh H, I, J, K, L) which reflect the communications to obtain the video post-conviction.

As per US Attorney's Office under US Attorney Preet Bharara letter of 5/18/15, the Petitioner charge was from 2008 to late November 2012 and that the petitioner is also a supervisor of Palmer Pharmacy. The Government put the blame of the misdeeds at Palmer Pharmacy on the petitioner, which is against the governing pharmacy law; the Petitioner works at Palmer Pharmacy for only 4 to 8 hours a week maximum. The Grand Jury Charges that Lasher was the pharmacist in charge of both pharmacy 2 and pharmacy 3 (Bates 0000287). However, Lasher was never the pharmacist in charge of both pharmacies; it was prosecutor's witness Goloff who was the pharmacist in charge at pharmacy 3 as per the pharmacy licensing board and his name was posted on the pharmacy door as pharmacist in charge. Thus, the Petitioner can not be convicted of misdeeds committed at Palmer Pharmacy as per the pharmacy governing law; only the pharmacist on duty can be held responsible as per the pharmacy governing law.

Trial Counsel Mr. Freeman failed to do due diligent in reviewing the evidence list, since it would have revealed that the government had the DVR recordings listed as evidence #008902. Mr. Freeman's malpractice contributed to my wrongful

conviction. It was the Petitioner who discovered that the Government had accessed the video recordings on Thursday 7/27/2016 in the 3500 material.

On November 15, 2016 (eighteen months after Petitioner's trial), through FOIA, Petitioner learned the Government not only had the original video surveillance recording in their possession, since 10/9/2013 (19 months prior to Petitioner's trial), they returned this very crucial piece of evidence to the Defendant Peter J. Riccio, without providing or disclosing a copy to the Petitioner or her attorneys (Exh H). Yet, the government criticized the Petitioner for filing with FOIA requesting the DEA and the US Attorney's Office for information (Pg. 1); if it wasn't for FOIA, the Petitioner would have never discovered that the Government suppressed the video recording, which was a cause for Brady Violation.

In the Government's letter of 3/3/2017, the Government continues to deceive the Court by stating "the videos may only be extracted, if at all, clip-by-clip" (Exh I Page 9), and that it would be too expensive of a process; the Petitioner's life should not be at the expense of the prosecutorial misconduct. However, the video recordings were recorded, with date and time as indicated on Exh I Pg. 12) as to how TiVo was recorded. It takes seconds, minutes at the most, to copy the video recordings onto a disk. Again, in a letter dated 4/25/17 (See Exh J) the Government used every excuse they could to not turn over the suppressed video recording; yet in the meantime, according to the video recording itself, the Government tampered with it by deleting/extracting scenes from it since 3/29/17.

Do the prosecutors think that they can continue to deceive your Honor? I believe the Court understands today's technology.

It progressed more harmful - Ex AG Preet Bharara continued to suppress the video recording via his letter of March 10, 2017 (See Exh K). To this day, nine more DVDs remain suppressed (See Exh H).

Not only did the Government try to frame the Petitioner by suppressing the video recordings, when they finally turned over the video recordings, scenes were TAMPERED/EXTRACTED from the video recordings. However, they failed to realized there were "back-up.

REQUESTING FOR AN EVIDENTIARY HEARING IN REGARD TO THE SUPPRESSED VIDEO RECORDINGS, THE SUPPRESSED PHOTOS ON THE PETITIONER'S CELL PHONE, AND THE SUPPRESSED 3500 MATERIALS

Thus, the Petitioner is requesting the Honorable Court to move for an evidentiary hearing in regard to the suppressed video recording, a Brady violation, which was recently turned over to the Petitioner; this suppressed video recording is clearly a Brady Violation due to the fact the information was suppressed and is exculpatory. The Petitioner is also asking for an independent expert forensic analysis to analyze the video recording. As seen in the video recording, the video recording was tampered with; it was modified on, including but not limited to these dates: 3/29/17, 3/30/17, 3/31/17, 4/3/17, 4/4/17, 4/5/17, 4/18/17, 4/19/17, 4/20/17, 4/21/17, 4/24/17, 4/26/17, 4/27/17, 4/28/17, 5/2/17.

The video recording that was sent to the Petitioner recorded 10/7/2012 to 11/29/2012; however, there were many missing cameras, including but not limited to camera # 17 through 32. The following dates were also missing from the video

recording: 10/30/12 to 11/6/2012, and from 11/9/2012 to 11/11/2012. Also, there were many missing recorded dates and times as well.

To date, the Bureau of Prison (BOP) only allowed the Petitioner to view 3 hours of the video recording. Upon the first review after extensive litigating for possession, the Petitioner noticed that the video recording was tampered with. This further violation of the Petitioner's constitutional right due to the video recording tampered and suppressed, wherefore a Brady Violation (exculpatory evidence) as well as prosecutorial misconduct occurred. The Government appeared to believe they committed the perfect crime against the Petitioner. However, they failed. All know there is no perfect crime. The Petitioner can prove the Government tampered with the video recording. For example:

Camera 6 showed the pharmacist's station. In camera 6 were many "missing" recorded times, such as:

1. Tuesday 10/9/2012 the Government deleted/extracted the recorded time of 9:21:50 - 9:31:06am, 9:32 - 9:34:30am; 10:32:15 - 10:34:04, 10:35:26 - 10:38:09; 11:14:32 - 11:20:13am, 11:39:39 - 11:41:24, 11:42:32 - 11:47:13.

However, from 9:21:50 to 9:31:06am, 10:32:15 - 10:34:04, the Petitioner was preparing paperwork and equipment for vaccination. From 9:32 - 9:34:30am, 10:35:26 - 10:38:09, the Petitioner consulted and administer flu vaccinations to patients. Again, from 11:14:32 to 11:20:13am the Petitioner prepared, consulted, and administered the flu shot to another customer. From, 11:39:39 - 11:41:24, 11:42:32 - 11:47:13 the Petitioner was in a meeting with the owner Peter J. Riccio in his office; many issues of meetings were noted in emails.

. The Petitioner can affirm this wrongful action due to the fact, the prosecutors failed to delete/extract those recorded times from the back up cameras, including but not limited to Camera 2, Camera 10 and 11, which confirmed what the Petitioner just stated in the aforementioned. It is apparent the Government extracted recordings of the petitioner's absence from the pharmacy counter to cover up whatever they accused the Petitioner of doing was false, including but not limited to the Government's claim that Lasher had full access to monitor pharmacies, but she couldn't have. The government extracted scenes whenever the Petitioner left the pharmacy for various purposes, such as to administer immunization to patients, consult with patients, to attend store meetings. As seen in the video recording, missing scenes were due to, including but not limited to, the Petitioner leaving the pharmacist's area to immunize, consult, meetings, etc... The Government also extracted scenes, which showed the Petitioner double/triple HAND count pills, to do paperwork, reading/studying the law to pass Pharmacy State Board exams of which the petitioner was paid to take these exams. The Government diligently worked to frame the Petitioner but they should not prevail due to the fact the prophetess told the Petitioner that she will see the Glory of God; no one is against the Petitioner.

As stated earlier, although the BOP allowed the Petitioner a limited amount of time to view the video recording, it was ample time to see that the Government TAMPERED with the video recordings due to many "deleted" recording times.

The Government can NOT claim there was a defect on the recordings because the other camera did not miss recording

times. Further, when there is a video loss, it will record as "video loss and the date and time, as seen in Camera 2

10/9/2012 from 9:45:48 to 9:46:56am, as an example.

.  To merit a new trial based on newly discovered evidence, the suppressed video recordings, the evidence would result in

an acquittal in that under the petitioner's supervision, everything was complied by law, including to, but not required by law,

to "slowly" hand count and triple checked all prescriptions, as confirmed by the video recording, which contradicted the

Government's witnesses testimonies.

The video recordings which were turned over showed the daily activity of the work flow in the pharmacies in that the

Petitioner followed rules and regulations of pharmacy law in that she properly counted, labeled and stored, destroyed

medication properly, and dispensed medications with valid prescriptions, all verified by doctors; yet this was contradicted by

the prosecutors' witnesses sworn testimony, and that she did not dispense to any "addict", as contradicted by the

Government's witnesses testimony. This act is CONSISTENCY shown throughout all of her places of employment that she

abided by all the rules. Even though only 2 months were on the video that was turned over to the petitioner, it is sufficient

to see the consistency in the petitioner's work; that she did not violate any law. In this case, all prescriptions were hand

counted. The video will also demonstrate further lack of the petitioner's knowledge of what the prosecutors' witnesses did

without her knowledge. The video will demonstrate that the Petitioner could not have the requisite intent.

The prosecutors claimed that the Petitioner's charges were from the Hellertown Pharmacy and Palmer Pharmacy & Much

More, and that these tapes were invalid because they recorded Towne Pharmacy and for only two months. However, the

conspiracy INCLUDED Towne Pharmacy. Once again, the prosecutors, again, contradicted themselves because at sentencing,

they charged the petitioner for committing the crime at Towne Pharmacy as well, and that her charges were from 2008 to

late November 2012 per US Attorneys' Office letter of 5/18/15, and the two months of video recording fall into this realm of

timeline of the "conspiracy." Fact: The Hellertown Pharmacy was not opened until November 2010 and Palmer Pharmacy &

Much More was not opened until June 2011, the Petitioner was employed by Peter J. Riccio since November 2008 (Towne

Pharmacy). Further affirming the Petitioner's innocence. Furthermore, the prosecutors' witnesses falsely testified that the

crime of not counting pills and not destroying pills CONTINUED throughout after the inspection, which was in September

2012; the video recordings from Oct 7, 2012 to Nov 29, 2012 (Towne Pharmacy), which is after the inspection, contradicted

the prosecutors' witnesses because it showed the Petitioner did everything according to the law, such as counting pills

properly and TRIPLE checked all of her work. Again, as the video recordings showed, all pills were hand counted and the

Petitioner was CONSISTENT and DILIGENT in her work.

If the Petitioner violated the law, the Government would have used the video recording against her. Because the

government knew that she did not break any law and so they suppressed the video recordings from her. The trial attorney

asked for all video recordings at all of Riccio's pharmacies but the government denied having any access to any of the video

recordings, and the trial judge, proved bias by denying the petitioner the subpoena. This exculpatory evidence could have exonerated her and is a clear violation of Brady as well as a violation of Petitioner's 5th Amendment Right (Due Process).

The only video recording which was turned over to the petitioner showed the petitioner supervised the pharmacy she was employed at, including Towne Pharmacy, as per the governing law; every pharmacist on duty also serves as a supervisor. At trial, the Government misled the jury as if the Petitioner was the ONLY supervisor of the pharmacies. However, the Government is wrong, again; the video recordings showed the lack of the Petitioner supervising or directing the work of others at Hellertown Pharmacy and Palmer Pharmacy & Much More via phone or cameras which contradicted government's witnesses testimonies (Pg. 5, 9).Thus it is impossible for the petitioner to be in a "conspiracy," or even aid and abet (Pg. 5) because the governing laws do not hold her accountable for other employees' actions. The Petitioner's conviction is a contradiction of law, the governing pharmacy law and the Government's made-up law. Emails which were not used in trial would have shown that the Petitioner was the only pharmacist employed who complied with the law. She notified the owner that other pharmacists did not comply to the law; they were upset with her because the owner told those pharmacists to listen to her. She wrote them up; the unredacted write ups in themselves show clearly that the Petitioner reprimanded the testifying witnesses for the very act that the Government presented as being directed by the Petitioner (See Exh M). As, now evident, the Petitioner was not present and proof of same was withheld from the jury. As per the superseding indictment, the criminal act were conducted on June 1, 2012, June 12, 2012, July 16, 2012, July 17, 2012, August 13, 2012, August 16, 2012, August 27, 2012. The Petitioner, now for the first time, has been, personally, provided with proof that establish her absence during the time in which the criminal acts occurred (Exh N). The Petitioner can not be guilty of a crime she was not there to commit, and which she did not agree to commit: more so, for an act that she did not condone. The work schedule would have and does also prove that the Petitioner was not at the Hellertown Pharmacy on October 2, 2012, when DEA agent Murphy surveyed the Hellertown Pharmacy and testified at Petitioner's trial concerning his observation of "unkempt" people entering Hellertown Pharmacy. Furthermore, AUSA Greenberg, during government summation, misled the jurors by misrepresenting to them that on October 2, 2012, Albert Buck "on two occasions, went to Ms. Lasher and stating something is wrong here; this is unusual. The second time, Buck said they (the oxycodone patients) appear to be high." stating ...Ms. Lasher said, "just fill...we are just filling the prescription. It's fine'. James Barnes, Steven Goloff, all said the same thing..."She didn't care." (T.1807-1808). Again, this is another false statement committed by the prosecutors' witnesses and the prosecution; this testimony was highly prejudicial and irrelevant since the Petitioner was not on duty at Hellertown Pharmacy on October 2, 2012. It was Goloff who dispensed all those prescriptions on October 2, 2012. The District's Judge allowing this testimony to be introduced is grounds for reversal of the Petitioner's conviction and sentence.

Also, the violation of the governing law (PA 27.12(b)(2) and the criminal statute 21 U.S.C. Sec. 321 (g)(1), 352(a), 352(c),

353(b)(1), and 353(b)(4)(A), in violation of 21 U.S.C. Sec. 331(a) and 33 (a)(2) REQUIRES the petitioner to be present at the pharmacy at the time the drug was dispensed. Further, the governing pharmacy law protects a pharmacist from being held liable for another pharmacist/technician/physician's actions thus, the numerous Pharmaceutical law and protocol support the Petitioner's testimony and impeach the testimony of the Government witnesses. The lack of ability to present that critical evidence, while the government asserted the knowledge of it's existence further undermine d the truth and advanced the perjured testimony. see Demarco v United States 928 F.2d 1074 (11th cir. 1991). The failure for the prosecution to correct perjured testimony is ground for the reversal of conviction.

Additionally, due to the write-ups, pharmacists Goloff and Geiger retaliated by falsely testified against the Petitioner. As seen in the video recordings, the Petitioner triple check all of her work. Whereby CONSISTENCY is the KEY. Therefore her conviction should be overturned due to her consistent behavior of always following the law, as the video recording depicted.

Besides suppressing the video recordings, the Government also suppressed:

1. 3500 materials of co-conspirator Peter Riccio's testimony:

For example, owner Peter J. Riccio, in his many emails (11/4/10, 11/30/10, 1/20/11, 5/8/11, 5/12/11, 5/27/11, 6/5/11, 6/25/11, 7/3/11, 8/7/11, 10/4/11, 2/23/12, 1/3/13, etc...), stated that he took full responsibility for everything; he had many lawyers to pay and that the lawyers check the fulfillment business (6/25/2011 email and 7/3/11) to make sure it was legit. He stated that Lasher 'had no legal or real titles...she was NOT a managing partner in a corporate sense. The title I gave her was so that the people working with her would be more apt to listen to them and make sure they did things correctly as Lena always did them." "When Lena was at Palmer Pharmacy & Much More, she was there purely on a mission to make sure that the pharmacist in charge and other staff pharmacist did things according to the laws of the land. She was not the pharmacist in charge at Palmer Pharmacy (Riccio's 1/3/2013 email to Attorney Metz and Attorney Mandel). Yet, the Government deceived the jury with its definition of the managing partner when it applied to Lasher.

2. The 3 photos which were "planted" onto the Petitioner's phone; none of these photos were in the discovery nor on the Petitioner's cell phone, and a clear violation of Brady as well as fraud on the Court. According to PA/FOIA's letter of January 6, 2017 (See Exh O), "the photos used at trial and Exhibit 801a-those would likely be something held and created by the U.S. Attorney's office in the Southern District of New York."

To this day, the photos, Exh 801, 801a, have not been turned over to petitioner. The Petitioner is also requesting your Honor to require by order the Government to provide an origin and chain of custody accounting to these photos because the petitioner now KNOWS these photos were "planted" onto her phone, due to the tampering of the video recordings.

Throughout trial, the prosecution accused the Petitioner of supervising via camera or by phone calls - which is against the governing pharmacy law because only the pharmacist on duty is held responsible for their shift. In other swords, no pharmacist can be held responsible for another pharmacist's misdeeds. No pharmacist can "supervise via camera or by phone calls". As in the Security of hospitals and retail pharmacies, they "monitor" the cameras -- they do NOT supervise nor can be

held responsible for what goes on in the pharmacy. Counsel allowed the government to claim the Petitioner supervised by "watching" the camera. This is false because a security person watching the camera is not a "supervisor!"

The Petitioner's need for an evidentiary hearing is to present evidence which contradicted the government's witnesses (Geiger, Goloff, Barnes, and Buck) testimonies. Thus, the "tampered" suppressed video recordings, "alleged" photos from the petitioner's cellular phone, and suppressed 3500 materials of Peter J. Riccio and Dr. Imbernino will significantly assist as an evidentiary matter for the proof of the incorrect assertions within the basis of the action filed with court. Wherefore, without the aforementioned information, the information is therefore not attainable for the evidential support needed to affirm the 18 U.S.C. 2255 Motion.

## C. LASHER'S INEFFECTIVE ASSISTANCE CLAIM IS OF MERIT:

The statement that counsel failed to assist in obtaining the DVR (video) is claimed as ineffective, not due to the lack of government suppression but due to not aggressively litigating to retrieve the video to show the innocence of Lasher, misrepresentation of the government, and later the tampering of exculpatory evidence. Further, the necessity of cooberating witnesses for the benefit of the truth brought forth by the Petitioner is clearly credit worthy. Everyone of the government witnesses that were prompted to perjure for their benefit would have been clearly discredited. Certainly if the government itself was ever scrutinized falsely in a "defendant" position they too would exercise these prevailing laws for constitutional rights.

## 1. INEFFECTIVENESS OF COUNSEL IN FAILING TO ALERT THE COURT AND FAILING TO PROVIDE
. KNOWLEDGE OF THE SUPPRESSED EXCULPATORY EVIDENCE

. The best evidence rule  (Evidence SS424-documents contradicting testimony) rests on the fact that a document is a more reliable, complete, and a more accurate source of information as to its contents and meaning than anyone's description; this is no less true as to the extent and circumstances of a contradiction, contained in the document, to a witness' testimony, where the alleged contradiction relates not to collateral matters but to the incrimination of a defendant in a criminal case. "We hold that the accused is entitled to the application of that rule, not merely because it will emphasize the contradiction to the jury, but because it will best inform them as to the document's impeachment weight and significance...The alleged contradiction to his witness' testimony relate not to collateral matters but to the very incrimination of petitioners. Except the testimony of this witness be believed, (pg. 455) this conviction probably could not have been had. Gordon v. United States 97 LED 447, 344 US 414.

The best evidence rule violation is that the video recordings and cell phone records discredited the Government's witnesses testimonies. Instead of using the video recordings to prove the petitioner committed misdeeds, the Government used witnesses to falsely testify such, To secure a wrongful conviction. Giglio v. U.S. 405 U.S. 150, 154 (1992) Napue, 360 U.S. at 271.

The Petitioner's trial attorney was ineffective on several grounds. An additional example of his ineffectiveness was that he did not raise the objection of the best evidence rule, when testimony was given by the Government witnesses who claimed that the Petitioner directed them to commit the violations. The counsel's objection for best evidence was critical at this point during the trial. This critical evidence would establish that the Petitioner did not direct or ship Butalbital and was not present in the video as referenced at trial by the Government's witnesses. Mr. Freeman never objected to the Government's witnesses' testimony concerning what the video surveillance showed, as this was a clear violation of the best evidence rule. "The trial attorney should consider objecting based on a violation of the best evidence rule in two general situations; first, when oral testimony is sought about a document, record, or photograph whose absence has not been established; and, second, when a duplicate is offered into evidence in place of an original without as sufficient showing that the original is lost, destroyed, or unobtainable. The goal of the best evidence rule is to place before the jury the best possible evidence of a given transaction. In the case of a writing are in the case of some other event that has been documented, the best evidence is the writing or the documentation itself. Matthew Bender & Company, Inc., Criminal Law Deskbook 2016, pg. 217.

Second, the Petitioner's various request for production of video surveillances of the inside of the pharmacies during the relevant times was withheld and denied by the District Court (See Exhibit L). This precise issue is relevant because the Petitioner requested on several occasions prior to trial, during trial, and prior to sentencing for the production of this evidence for the presentation to the jury and judge, to show petitioner's actual innocence. The Government's denial of Petitioner's request for the video surveillance and the suppression of the video, despite its many references at trial was extremely prejudicial, and in violation of Brady. "Brady requires that the government disclose material evidence favorable to a criminal defendant. United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004). Evidence is favorable if it is either exculpatory or impeaching, Strickler v. Greene, 527 U.S 263, 281-82, 119 S. Ct. 1936, 144 L.Ed. 2d 286 (1999), and it is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Youngblood v. West Virginia, 547 U.S. 867, 870, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006)(quotation marks omitted)." "A conviction must be reversed "upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. (quotation marks omitted). In this case, the (suppressed) video recording business records, the best evidence rule would have exonerated the petitioner of the allegations and the charges in that the petitioner followed rules and regulations of pharmacy law in that she properly counted (weighing pills is also legal)k, labeled and stored, destroyed medications properly, and dispensed medications with valid prescriptions, which were verified by doctors; this was contradicted by the prosecutors' witnesses sworn testimony.

Trial attorney in his letter dated 2/15/17, again confirmed he never received the video recordings.

2. INEFFECTIVENESS OF COUNSEL IN FAILURE TO ALERT THE COURT OF THE PETITIONER'S

. LACK OF CULPABILITY (See ARGUMENT 4)

The forfeitures are wrongfully imposed based on the fact:

A. The Petitioner is not an owner of the pharmacy and

B. The conviction is challenged due to insufficient true evidence.

3. INEFFECTIVENESS OF COUNSEL IN FAILURE TO INTERVIEW WITNESSES AND FAILURE TO USE

. BUSINESS RECORDS (INCLUDING CELL PHONE RECORDS) TO CORROBORATE PETITIONER'S STATEMENTS, AS

. CONFIRMED IN THE SUPPRESSED VIDEO RECORDINGS

Prior to trial, as per the Petitioner's request to counsel in many phone calls, emails, and meetings, to interview potential witnesses, he refused to; he did not interview/investigate any of her witnesses. However, counsel's duty is to interview/investigate witnesses. In light of Adnan Syed, Maryland, post-conviction case (2016), it is reasonable for an attorney to investigate witnesses. "Defense attorneys not talking to" witness "raises a real concern," Chief Judge Patrick L. Woodward said. "Until trial, a defense attorney must" always, always "investigate all leads for alibis, Syed's attorney C. Justice Brown, Baltimore, said in his responding arguments. "As a defense attorney, you gather information," he said. "It's a fluid type of role." Yet he failed his duty to interview/investigate.

For example: Counsel should have interviewed, including but not limited to:

A. Elfreda Ekwunife, as per her 3500 material, told the agents in many interviews that all laws were complied to, such as counting/weighing/destroying pills. In one interview, she must have been coerced to change her statements to contradict her many other interviews. Her many statements contradicted the testifying witnesses and thus would have been in Petitioner's favor.

First and foremost, Elfreda Ekwunife and Lasher do not work together; their work schedules do not overlap. It was important for counsel to interview witnesses because their answers do not make sense due to being contradictory to pharmacy records, such as the work schedule, the best evidence rule. For example, how can Ekwunife observe Lasher's action if she does not work with Lasher? Thus, the line of questioning that the agents asked are contradictory to pharmacy records and are misleading. Of course, Ekwunife could not have observed Lasher contacting doctors or do anything as she told the agents; the agents failed to disclose that Ekwunife and Lasher do not work together. Thus, it was important for counsel to interview witnesses because their answers don't make sense due to the agents line of questioning and due to being contradictory to pharmacy records, the best evidence rule.

Again, how can Lasher treat employees harshly if Ekwunife and Lasher do not work side by side? If Ekwunife thinks Lasher treated employees harshly, it is because Lasher wants them to follow the law. Then it is what it is.

None of Lasher's witnesses testimonies would have hurt her, as the government speculate. In fact, it would help Lasher because Ekwunife's testimonies matched pharmacy paperwork, the best evidence rule, and would contradict

prosecutors' witnesses testimonies, as per her many interviews in regard to adhering to the law.

B. Thomas Pisko, in his second (2 of 2) interview, told the agents that he repeated what he heard from other employees, and his previous answers were not his answer. Thus, if he were interviewed by trail counsel, he would have said that he does not count pills while under the Petitioner's watch; his main job was to file paperwork. Also, if Pisko complained about the scale's being inaccurate, that is a company's issue which was never reported to the Petitioner. Counsel should have interviewed/investigate based on the agents' line of questioning.

C. It was pertinent that counsel also interviewed technicians Lindsay H,. Chris Haring, Erik Cajilema, Laura Getz, Katie Scott; they told agents that pills were either hand counted or weighed; none complained about the scales. All of these witnesses would be in the Petitioner's favor.

D. It was pertinent that counsel called pharmacist James Kacer, Elfreda Ekwunife, Michael Della-Ventura, William Cantagallo; they would have testified that they spoke to doctors regularly, as per pharmacy business records (prescriptions, phone and fax records), the best evidence rule.

E. Video recordings and media records of the Petitioner's cell phone disproved the government's witnesses testimonies in that she supervised via video and phone when she was not in the pharmacy.

F. Oxycodone prescriptions were verified as valid by the doctors, Board of medicine, and DEA. Thus, how can the Petitioner dispensed "invalid" oxycodone prescriptions?

G. Doctors' faxes of Dr. Konakanchi stated that the doctors themselves phone consulted patients; tech Katie Scott and Erik Cajilema told the agents that they/pharmacists spoke to doctors, including Dr. Burling, to confirm that he phone consulted patients; this testimony along with phone and fax records contradict Dr. Burling, the government witness' false testimony.

H. As per the Petitioner's many request to counsel, counsel failed to contact a MURP representative to show the Court and the jury that the pharmacy returned drugs to MURP to be destroyed. AUSA Richenthal, while holding a MURP document, lied to the jury by telling them that the Petitioner never destroyed "returned" medications via MURP, but the MURP paperwork contradicted his statements; counsel failed to correct Richenthal's perjuries. The Petitioner is requesting an EVIDENTIARY HEARING in regard to this matter. Counsel also failed to correct the Government in that patients did NOT return medications to the pharmacy; the packages were returned by the post office due to "undeliverable/unclaimed, etc... Thus, the medications did NOT touch the patients hands as the government claimed.

I. Counsel failed to obtain unemployment record of Government witness, Albert Buck, to prove that he perjured on the stand in retaliation for his being fired; he testified that he resigned from the Pharmacy when the facts showed that he was fired due to bad performances. The techs' statements were as if they were "pharmacy expert witness" who know the laws, statutes, regulations and are properly licensed and insured. However, techs can not answer questions as if they are

pharmacists who oversee the operation of a pharmacy; all of this is the responsibility of the pharmacist on duty as per the

governing pharmacy law. The DEA committed fraud with this line of questioning.

J. Trial counsel did not even interview the co-conspirator, owner Peter J. Riccio; he would have testified that he took

full responsibility for everything, as in his many many emails (dated 11/4/10, 11/30/10, 1/20/11, 5/8/11, 5/12/11,

5/27/11, 6/5/11, 6/25/11, 7/3/11, 8/17/11, 10/14/11, 2/23/12, 1/3/13).

   In conclusion, it was pertinent that counsel interview/investigate each of the Petitioner's witnesses due to their being

intimidated by the agents, fraudulently asked by the agents - allowing them to "speculate" without any back-up evidence

(such as internet prescriptions were done without a physician - patient consultation, and also to contradict the government

witnesses' testimony. Trial counsel failed his duty to fully investigate witnesses nor obtain evidence, such as the suppressed

video recordings, petitioner's media records, Dr. Konakanchi's, Dr. Burling's, and Riccio's pharmacies phone records, Albert

Buck's unemployment record, to corroborate the Petitioner's statements, and to impeach and refute the testimony of the

government's witnesses. Moore v. Sec'y PA, Dept. of Corr, 3d Cir. 2016 BL49448. As in Satterfield v. Dist. Attorney Phila.,

2017 BL 339627, 3d Cir., No. 15-2190, 9/26/17, Man who says he's innocent "will have the opportunity to prove his actual

innocence, the U.S. Court of Appeals for the Third Circuit held Sept. 26. The court applied the U.S. Supreme Court's 2013

decision in McQuiggin v. Perkins and a federal procedural rule to find that Paul Satterfield can pursue his innocence claim in

the district court.

   Actual innocence, if proved, can overcome procedural hurdles, the Supreme Court held in McQuiggin. Satterfield argued

that his lawyer was ineffective because he failed to interview or call to the stand witnesses. Just like the Petitioner, her

lawyer was ineffective as well for the same reason; thus the Petitioner should also have the opportunity to prove her "actual

innocence."

   The Government nor trial counsel can NOT speculate if any witness would hurt Lasher, unless trial counsel personally

interviewed them, which he did not. A speculation is a speculation; it is not fact. The Petitioner should not be convicted due

to the Government or trial counsel's "speculation".

## 4. INEFFECTIVENESS OF COUNSEL IN FAILURE TO PROVIDE EXPERT WITNESS:

   During trial preparation when trial counsel notified the Petitioner that he could not find an expert witness, the Petitioner

was able to locate an expert witness with the wherewithal to effectively explain to the jury that allegations and charges

against the Petitioner were not true. The name of the expert witness is Dr. Richard Greene. Dr. Greene was interviewed by

the trial counsel at the forceful request of the Petitioner; Mr. Freeman expressed his satisfaction of Dr. Greene and agreed

that Dr. Greene would be called to testify in her defense as an expert witness. However, unbeknownst to the petitioner Dr.

Greene was never retained for his testimony at her trial. In fact, Mr. Freeman did not tell the Petitioner that Dr. Greene or

any other expert witness would be testifying her defense, until the Petitioner, on Day 4 of the trial, asked Mr. Freeman when

was Dr. Greene going to testify. Thus, the petitioner was in shocked when counsel stated at trial she had no expert witness.

The petitioner is NOT a lawyer and with no law experience. The Petitioner had no control of her own case, as trial counsel told her and her husband over and over again, "you are not a lawyer, we are. We know what we are doing." [Yes, trial counsel, an undercover prosecutor, knew exactly how he threw the Petitioner and his other clients to the wolves . how does she know she was allowed to object to her own counsel's decision? Also, during trial, she was sick with bronchitis and was heavily medicated with controlled substances cough medicine; she was too weak and drowsy at trial. Not only that, she was told to speak when spoken to, and to only answer what is asked and not to give explanation; Counsel would direct her - he directed her into the wolves' mouth.

After the trial, counsel Nadjia Limani in a text forbid the petitioner from contacting Dr. Greene, without a reason.

To rebut the Government's opposition to the Petitioner 2255 Motion, the petitioner's expert witness might not have the experience to testify; one has to start somewhere to obtain "experience." However, he has the expertise on the case itself (See Govt Exh B). In fact, his CV (Exhibit is on file with the Court) showed he is overly qualify with the knowledge of law and regulations in that the Petitioner did not break any law(s) she was indicted of, and that the Court has no right to change the governing pharmacy law to those of the government's made-up law. Thus, this will make a difference in the outcome at trial.

.  To this day, the Petitioner did not break any law, as clearly shown on the video recording that the Government suppressed and tampered with.

On the other hand, the Government's expert witness was experienced at misleading the jury. Catizone's purpose was to convict the petitioner with opinions; he made the rules as he goes with NO back-up for the law. However, opinion is not the law, rule and regulations.

Under cross examination Catizone changed his testimony:

A face to face is NOT required for NON controlled substances (Catizone: T. 1074):

Freeman: Okay. The Federal law, as you testified -- now I'm talking about 21 U.S.C. 353-- does not say that a face-to-face is required under federal law for "NON controlled" substances, correct?

Catizone: Yes, sir.

Freeman: Let me ask it this way. The state law, all 50 state laws, do not specifically state in their statutes that a face-to-face is required?

Catizone: Correct.

Under cross exam, Catizone, again, was caught in lies in that he contradicted himself, over and over, again (T.1074, 1077-1078)

(Catizone: T. 1077-1078)

Freeman: Now, you testified about filling a prescription for oxycodone where three states are involved. In the example given

to you by Ms. Greenberg, a Florida doctor, an Ohio resident, filling a prescription in Pennsylvania, are we on the same page?

Catizone: Yes, sir...

Freeman: Isn't it a judgment call in the final analysis for the pharmacist to decide whether to fill a prescription like that?

Catizone: Yes, sir.

Freeman: It's not against any rule or regulation that you know of, per se, to fill a prescription that involves three states?

Catizone: Correct.

Freeman: Would it be appropriate for a reasonable pharmacist, under that three-state hypothetical, to call the prescriber's office to find out if there was such a patient? Would that be a reasonable thing to do, for a reasonable pharmacist to call down to the prescribing institution in Florida, whether it be a doctor or a pain clinic, and ask the people that run the clinic or the doctor if the the person's name on the prescription is in fact a patient of theirs? Would that be a reasonable thing to do?

Catizone: Partially reasonable.

Freeman: If the pharmacist also called the Board of Medicine in Florida to find out if this, in this case a pain clinic, was legitimate and up and running; would that be a reasonable thing to do?

Catizone: Yes sir.

The Petitioner is asking the Court "How can the Petitioner be convicted of breaking laws when ALL the aforementioned laws were followed and the Petitioner was never indicted for any such related charges?"

The petitioner is asking the Court? How can the Petitioner be convicted of breaking laws when ALL the aforementioned laws were followed? Catizone under cross confirmed that the Petitioner did not violate any law.

5. INEFFECTIVENESS OF COUNSEL IN FAILURE TO RAISE THE RELIANCE OF IN-HOUSE COUNSEL

Reliance on counsel was one of the decisions the Petitioner want to proceed with this defense, as per Petitioner's many emails, phone calls, and meetings with counsel.

On 4/13/15 the Petitioner was too ill to testify on anything. It was her own attorney who decided that she will not be testifying - also, she was too sick to realize what was going on in Court. The Court wrongfully denied her defense of reliance of in-house counsel. This was a violation of Petitioner's Constitutional Right; the Petitioner should have the chance to appeal this wrongful decision.

The Petitioner is merely an employee who relied on the direction of owner Peter J. Riccio to make sure everything is legit and comply to the law; he told her verbally and in many emails that the prescriptions were legit because his lawyers made sure they were (email dated 11/4/10, 4/6/11, 6/16/11, 6/25/11, 7/3/11, 7/5/11, 8/9/11, 9/28/11, 10/13/11, 10/14/11, 4/7/12, 8/8/12, 10/17/12, 11/5/12, 1/1/13). This pharmacy business was NOT her business; she did not have her own attorney; the governing pharmacy law did not require her to retain her own attorney. However, she relied on the owner Peter J. Riccio and his attorneys to make sure everything is legit and comply to the law.

In light of Lorenzo v. SEC (No.15-1202) (D.C. Cir. Sept. 29, 2017) the boss retained "ultimate authority" over everything (as per emails dated 11/4/10, 11/30/10, 1/20/11, 5/8/11, 5/12/11, 5/27/11, 6/5/11, 6/25/11, 7/3/11, 8/17/11, 10/14/11, 2/23/12, 1/3/13.

Petitioner asked Counsel to interview the owner's attorneys; counsel did not interview or investigate any of the owner's lawyers (email dated 6/25/11, 7/3/11, 10/14/11, 8/8/12, 11/5/12, 1/1/13). The Petitioner told counsel in may emails she want to proceed wit this defense, but he ignored her wishes; this was why she stated in her affidavit that she relied on attorneys' advice "regarding the legality of dispensing prescriptions via the internet" and were told that the prescriptions were (S2002 legislation).

6. INEFFECTIVENESS OF COUNSEL IN FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT DUE TO SUPPRESSION OF EVIDENCE AND FAILURE TO CORRECT PERJURED TESTIMONIES

To rebut the Government's response:

To judge this motion based on previous motions is a fallacy of logic: Attack the messenger. The Petitioner's previous motions have no bearing on the present ones. To even refer to previous ones show an attack - the messenger bias, by not judging the content but sticking with prejudgment of the Petitioner. Actual, it is unethical to judge motion based on previous ones.

A. The trial judge was incorrect by denying the Petitioner bail due to all the drugs the Petitioner dispensed were "controlled substance"; however, all the medications dispensed  via the fulfillment pharmacies were NON controlled substances whereas throughout trial, they were misrepresented as "highly addicted medications" - words made up by the Government (T.1768). This is misleading because no drug can be classified as 'addictive pain meds" per the Controlled Substances Act. In fact, none of the drugs the Petitioner dispensed via the fulfillment pharmacies were classified as a pain med.

B. The jury wrongly convicted the Petitioner and the Second Circuit  wrongly denied the Petitioner's appeal because they were unaware of the mountain of Government's and its witnesses perjuries, including but not limited to:

1a. The Government made-up laws which contradicted the governing pharmacy law -

valid prescription does NOT applied to NON controlled substances per the governing pharmacy law

bonafide PHYSICIAN - PATIENT relationship; please tell me, do you see the word judge, court, attorney, or even pharmacist in the words "PHYSICIAN - PATIENT relationship"? thus this is very VAGUE.

1b. A pharmacist can not be responsible for another pharmacist(s)' actions, per the governing pharmacy law.

2. The Government withheld, tampered, suppressed, planted evidence as stated in the Petitioner's 2255 Motion, to secure a WRONGFUL CONVICTION.

a. The suppressed (and tampered) video recording showed the Petitioner complied to the law in that she counted, labeled, stored, dispensed, destroyed medications (via MURP) properly as she testified. Return medications as being reused were not

done on the Petitioner's watch. Instead of using the suppressed video recording and the pharmacy business records, MURP (McKesson Unsalable Return Program), a program in which the pharmacy used to send drugs, such as "returned drugs", back to the wholesaler to be destroyed, prosecutors used Agent Popowich's, Agent Germano, Goloff, Geiger, Barnes, and Buck, perjured testimony to falsely accuses the petitioner of dispensing "returned" drugs. The Petitioner is requesting an EVIDENTIARY HEARING on this issue. The Government deleted scenes from the video recording, but the "back-up" cameras confirmed the Government's tampering of the video recordings. The suppressed and although tampered, will exonerate the Petitioner.

b. Planting/tampering evidence by the DEA agents - the Petitioner is requesting an EVIDENTIARY Hearing on this issue

c. Planting photos onto the Petitioner's cell phone - the Petitioner is requesting an EVIDENTIARY HEARING on this issue

3. None of the prescriptions dispensed via the fulfillment pharmacy were controlled substances, or even "addictive pain meds (words made up by the Government), or even in the "pain" class.

4. All prescriptions, including narcotics, an uncharged charge, were dispensed with valid prescriptions; they were verified with prescribing physicians, Board of Medicine, and DEA.

5. The government and its witnesses falsely accused the Petitioner of forging narcotics when the doctor himself confirmed to the agents he wrote and signed those prescriptions himself. (See Exh P - BATES document 010085).

6. The Government and its witnesses falsely testified that the Petitioner dispensed narcotics to addict, and that she lied and direct others to lie to the inspector. However, it was the Government and its witnesses, including the inspector (pharmacy inspector Bat) who lied at the Petitioner's trial, as indicated in the Petitioner's 2255 Motion Ground 8 Point B Pg. 15-16. The Pennsylvania Board of Medicine ORDER contradicted their testimonies in that the Petitioner did NOT dispense to the "alleged" "addict.

7. The Petitioner was indicted and convicted for distributing "butalbital"", a controlled substance drug; however, "butalbital" was never stocked in the pharmacy nor ever dispensed or handled by the Petitioner. This is fraud against heaven and earth. because the pharmacy never carried it.

8. Withheld faxes of Dr. Konakanchi who perjured at Petitioner's trial, "hoping for no jail time".

9. The change in physicians' dosages instructions on prescriptions is legal as long as we have permission from the doctors; in this case we secured permission from the physicians as documented by pharmacists Peter J. Riccio, Michael Della-Ventura, and William Cantagallo via emails, which were suppressed/withheld by the Government and trial attorney, and via prescriptions themselves. Again, trial attorney did not interview ANY of the Petitioner's witnesses to confirm the Petitioner's testimony and pharmacy business records.

10. Unredacted write ups in themselves show clearly that the Petitioner reprimanded the testifying witnesses, for the very act that the government presented as being directed by the Petitioner.

11. The pharmacist, Goloff, who testified against the Petitioner admitted, in his 3500 materials, to prostitution and narcotics theft. Under cross he was caught in lies and thus the Petitioner was acquitted of Count 6; Goloff under direct testified that the Petitioner forced him to write a good faith letter otherwise he would lose his job. How can he lose a job when there is no job for anyone, including the Petitioner, to go back to? Under cross examination, Goloff changed his testimony in that he was not "forced, he was "asked". Because the Petitioner was acquitted of Count 6, the Petitioner is asserting that she was wrongly convicted due to the Government's lies which she backed up with evidence.

Trial counsel did not object to nor challenge to the aforementioned perjured testimony of the government and its witnesses. If counsel had presented the best evidence rule, the suppressed video recordings, media records of the Petitioner's cell phone, pharmacy paper trail (phone/faxes/prescriptions/invoices/emails records), Petitioner's witnesses such as the MURP representative to confirm that the pharmacies destroyed medications via MURP to contradict the Government and their witnesses' perjuries, there would be NO conviction. Thus, this must be why the Petitioner was acquitted of Count 6 - witnesses tampering; the Government witness, Steven Goloff, contradicted himself throughout Petitioner's trial. He was caught lying. On the other hand, the Petitioner did not perjured at her trial; the best evidence rule cooberate her testimony. It was the Government and its witness who is busted by the Petitioner for framing the Petitioner, via the "suppressed/tampered video recording.

The Government witnesses testified to get a nonprosecution agreement, to cover up for their own misdeeds.

Through out trial, the Petitioner was not allowed to defend herself. She was mainly allowed to answer Yes, No answer, otherwise she was reprimanded by the trial Court. Thus, she was not allowed to talk any further on the issue of the photos on her phone during cross examination, as the Government implied (another lie).

In regard to the photos on the phone: The Government's question to her at trial was What do you see on your phone? She answered: She saw 3 photos on the phone. HOWEVER, these photos were not "her" photos. She did not get a chance to tell the jury those photos were planted. She asked her attorney to direct her on exam, he ignored her wishes (this was also indicated many times via e-mails)

Due to the tampering of the video recording, the Petitioner now KNOWS that these photos were "planted onto her cell phone as NONE of these photos were in discovery or anywhere in her cell phone. As the PA/FOIA's letter of 1/6/2017, "the photos used a trial and Exhibit 801a - those would likely be something HELD and CREATED by the US Attorney's Office in the Southern district New York. This is purely prosecutorial misconduct, not at all a speculation as the Government implied.

As a Boston Globe article recently stated about a state chemist altering the lab reports to frame the defendants so that the Prosecutors would "win" cases; the Petitioner is contending the Government and its witnesses, including the DEA's agents, framed her. Your Honorable Court, you could stop this injustice (See Exh Q).

II. LASHER'S MOTION FOR VACATUR OF HER FORFEITURE JUDGMENT SHOULD NOT BE DENIED based on the recent Supreme Court case Honeycutt v. United States, 137 S. Ct. 1626 (2017).(See exh R), AND IF IT WERE TO BE DENIED DUE TO BEING UNCONSTITUTIONAL UNDER THE 2255 MOTION RULE, THEN THE PETITIONER WILL REFILE THE MOTION FOR VACATUR.

The forfeiture are wrongfully imposed based on the fact:

A. The Petitioner is not an owner of the pharmacy and

B. The conviction is challenged due to insufficient true evidence.

The Grand Jury Charges: Lena Lasher and Peter J. Riccio billed website operators (0000263, 0000271). However, Lasher never billed web operators, never received funds by wire, never had access/control to any account.

Forfeiture was appealed in Petitioner's direct appeal (See Exh S - Pg. 15 - Reply Brief for Defendant-Appellant 15-2915-cr) "Lasher was ordered to forfeit $2,500,000.00 without an adequate basis for determining the losses involved. (A.140) The ringleader who owned the pharmacies, and was the largest profiteer from the illegal conduct therein, co-defendant Peter J. Riccio, was ordered to forfeit only $321,572.31." However, all the Petitioner received was her wage, and often times less (See Exh T). The Government has no right to take proceeds from a Petitioner who never had them, as in Honeycutt v. United States, U.S., No. 16-142, 6/5/17. The Government complained the Petitioner sued witnesses who cannot afford counsel (Pg. 1). However, one of the witnesses gave himself a bonus of $1.85 million alone in 2011 (See exh U), cheated the Petitioner out of her pay (see Exh V), and had his office manager, Laura Hishmeh, forged the Petitioner's signature on bank and credit card documents as well as pharmacy contracts, that gave the false impression that the Petitioner was an owner of one or more of the Riccio pharmacies; and that she was in control of the bank accounts referencing her name (See Exh W); the Government complained that this witness cannot afford counsel. Yet, the Government is going after the Petitioner, an indigent, for $2.5 million, which is ironic. The Petitioner is currently earning $0.12 an hour, earning $0.00 the past 3 months. The Petitioner, in fact, never had any ownership interest in any of the Riccio's pharmacies.

Trial counsel should have ordered a fatico or a forfeiture hearing. According to the Petitioner's PSI (8/27/2015), "Victim info was requested from the Government and is awaited". To confirm, as of today there are no victims listed. The forfeiture was ordered without evidence of one single witness receiving tampered/misbranded drugs; the drug was never tested for misbranding to see whether the drug was adulterated- the drugs were not tested because the Government knew the drugs were not misbranded, otherwise the Government would have had the drugs tested. According to Carnesi v. US (US District Court NY 3/18/2013), a failure to determine identifiable victims' losses within 90 days after sentencing is a harmless error. To commit a crime, there must be a victim. To note, the government's witness, Amanda Walker, is not a victim and there is no evidence that she received "recycled" medications. Because there is no "victims", the Petitioner's forfeiture must also be vacated, as well as due to the ruling of Honeycutt v. United States.

III.  LASHER'S MOTION FOR RESENTENCING TO HOME CONFINEMENT BASED ON VIOLATION OF 8TH AMENDMENT -

. MISTREATMENT BY THE FEDERAL BUREAU OF PRISONS (BOP) SHOULD BE GRANTED

Lasher's claims and lawful attack of her conviction and sentencing constitute the further consideration of sentence hearing for the correction of her sentencing based on the 8th Amendment Violation. It would be worthy for the Court to consider this modification as a timely review and determination of her legal merits in the 2255 Motion to assist in the correction to defuse and further violations against the Petitioner.

This motion was submitted to the District of incarceration, which is the District of Connecticut, where the petitioner is confined; Petitioner was told to file this motion at the criminal court, which is the SDNY (See Exh X).

The Petitioner contends that the Bureau of Prisons (BOP), at Danbury, has violated her 8th amendment right to be "free from unusual pain and suffering". She is requesting her sentence be amended to home confinement based on the Bureau of Prison, at Danbury, indifference to and delays in providing her with:

.1. protection in regard to being stalked and (sexually) harassed by an Education staff member, Mr. Menconi,

2. medical care.

The above indifference to and delays in providing her with proper care has caused her prolonged needless pain and anguish.

The petitioner asserts that this indifference and delay constitute a violation of her constitutional right to be free from cruel and unusual punishment.

1. She has reported the stalking and harassment incidents to the Bureau of Prison since February 23, 2017 (See Exh Y), and all the way up to the Central Office Administrative Remedy Appeal level (Se Exh Y). Both the Government and the Bureau of Prison, again, tried to deceive the Court by stating that the Petitioner has not exhaust her Administrative Remedy. The Petitioner's Administrative Remedy was exhausted on July 27, 2017 (See Exh Y); the BOP did not even bothered addressing the harassment issue. Because the sexual harassment escalated, the Petitioner filed another harassment complaint against Mr. Menconi on June 2, 2017 (Please see Exhibit Y). An "investigation" was conducted. Within two weeks, Mr. Menconi returned to the facility. The Bureau of Prisons did not give her any notice nor prepare her for his return despite her stress and psychological needs; her stress and psychological needs were not addressed, and are present on a daily basis.

Because the Bureau of Prisons continues to "cover up" for Mr. Menconi, the stalker and the harasser, his actions are escalating and has gotten worse (See Exh Y); thus the Petitioner has no choice but to seek the help of the District

Court by filing a "Motion for Amended Sentence Based on Violation of 8th Amendment" on August 17, 2017 (See Exh Y).

Due to the BOP not providing the Petitioner, the victim, with any remedy nor grant her a hearing to her complaint of 6/2/2017, and continue to protect its staff member, the Petitioner appealed to the Regional level on 10/4/2017 (See Exh Y).

The petitioner saw the psychologist, Dr. Stacy, on July 25, 2017 @ 9:30am (this was the earliest appointment she could get from psychology). While incarcerated, there is no way for the Petitioner to "escape" Mr. Menconi. If this is how the Bureau of Prisons deals with harassment issues, by covering up for staff, none of the inmates are safe from being stalked or harassed. The Petitioner reminded Dr. Stacy that she is the victim and should not be punished for Mr. Menconi's behaviors; the Bureau Of Prison needs to protect her from people like Mr. Menconi.  The Petitioner told Dr. Stacy that Mr.  Menconi needs to be transferred to the FCI down the hill and work with the men. He needs help and should not be with the women in the meantime. She is definitely not his "first" victim (witnesses will testify on her behalf that they know of other "victims"), and because the Bureau of Prisons cover up Mr. Menconi's actions, she will not be his "last victim". Not sending the Petitioner home and continue to throw her to the wolf is "cruel and unusual punishment."

Besides the stalking and the harassing, Mr. Menconi has done many things to obstruct her due process to the Court. On numerous occasions, he tried to stop her from using the copier machine every chance he could (She has reported this to the BOP with dates of his actions, but to no avail) so that she would not be able to meet Court deadlines. He has changed the rules many times, at the drop of a hat, just to target her; it seems he does the aforementioned to try to stop her from overturning her conviction.

Due to the conviction, the Petitioner has lost everything. Thus, while in prison, she worked on a legal secretary apprenticeship so that she can earn a living once she gets released. Although Mr. Menconi was not her apprenticeship coordinator, he made sure she lost her apprenticeship by unfairly and unjustly terminating her from Education (She has never had an incident report nor a write up), just because she refused his attention. However, due to the Petitioner persistency on her quest for justice, she continues to file many documents, backing up those documents with paper trail, the best evidence rule. Finally, on, October 4, 2017, she received her legal secretary apprenticeship(See Exh Z). The Petitioner now wishes that the Honorable Court will use the best evidence rule to exonerate her.

To this day, Mr. Menconi still stalked and harassed her.  He nailed her coffin, over and over again.

The Petitioner understands Amendment V and VIII protect her from being stalked and sexually harassed. Amendment V is her due process to a hearing and to her access to the Court. She has requested a hearing so that she can produce evidence, along with witnesses to testify on her behalf that Mr. Menconi has been sexually harassing and stalking her; to this day he still can't keep his eyes off of her (Please See Exh Y).

2. As your Honor may recall, the Petitioner was very sick throughout her trial with bronchitis (Her medical documents are at St. Michael Medical Center in Newark, NJ, also at her physicians' offices in New Jersey (Phillipsburg), and also at home. Due to her physician's sick note(s), she requested trial attorney Mr. Louis Freeman to ask you for an adjournment of her trial; he told her that you refused to postpone her trial. Thus, during trial, in order to stop the coughing, the Petitioner was heavily sedated with cough medications containing "codeine". Even though the cough syrup contains "codeine", a schedule II

ingredient, the cough medications prescribed to her were:

a. a Schedule V (this can be purchased without a prescription), and

b. another cough medication, a Schedule II, which required a prescription and record keeping.

Both medications made her very drowsy. She tried very hard to stay awake by inputting a lot of caffeine.

Your Honor, the Petitioner was very sick during trial.

The Petitioner was admitted to Danbury Prison Camp on December 14, 2015.

a. Within the first few weeks of being at Danbury Prison Camp, she became ill, again with bronchitis. It took a few weeks of being seen to finally received an antibiotic. She took so much cough medicine (over the counter) but still could not stop the coughing; she felt like she was gasping for air. It took a few more months before she was prescribed a rescue inhaler. She used up this inhaler pretty quickly. It took a year and a half before a steroid inhaled (Asmanex) was prescribed to her.

Just four months again, the Petitioner, again became very ill, with bronchitis. Again, it took weeks before she was prescribed an antibiotic.

In February 2017, she filled out a sick call regarding a lump in her breast. Finally on Wednesday August 2, 2017 she was taken to Northeast Radiology for a mammogram. The x-ray technician said she saw something on the Petitioner left breast and so she ordered an ultrasound for 2:45pm. Because of the Bureau of Prison' policy, the ultrasound was finally rescheduled for October 10, 2017. Due the result of the mammogram/ultrasound, she needs to be followed up in 6 months

In the meantime, the Petitioner's health is getting worse. she is always gasping for air. On July 27, 2017 she was told she can not work with dust, chemicals or irritants. (Please See Exh 1) .

The Petitioner is also including her fellow inmates who have medical issues that have not been handled well by the Federal Bureau of Prisons (Please see Exhibits 2); delay of medical care is cruel and unusual punishment.

Similar cases before Federal and state courts support her allegations of cruel and unusual punishment. Namely, Coker v. Georgia, Priest v. Cupp, Estelle v. Gamble, Schuetzle v. Vogel, Hathaway v. Coughlin, Ricketts v. Ciccone, Comestock v. McCrary, and Cutter v. Petties.

The Petitioner is a pharmacist, as seen in the (suppressed) video recordings who always triple checked her work. She believes in being fast and accurate with all medications she dispensed to all her customers; they do not need to suffer with prolonged wait time. Here, at the Bureau of Prison, the Petitioner continues to suffer with unnecessary delay of medical care, and unwanted stalking and sexual harassment.

It is now the second week of October and the Petitioner continues to suffer sometimes immeasurable pain. She is requesting immediate release to home confinement so that she may seek appropriate medical care, and free from the unwanted stalking and sexual harassment. The Petitioner has shown "cause and prejudice," and also has exhausted her administrative remedies, as complied to the law.

## IV. LASHER'S MOTIONS FOR TRANSCRIPTS SHOULD BE GRANTED:

The transcripts of the trial are rightfully accessible for a defendant Petitioner challenging her sentence and challenging her conviction. The financial forms for minor cost assistance for the providing of paper copies is worthy, due to Lasher need for continuing to prove the government's injustices and tampering.

It is the higher court's need to now review, the government's means of again attempting to not allow the Petitioner rightful information to prove the assertions, allegations and tampered evidence caused the wrongful conviction.

While incarcerated, the Petitioner is at a disadvantage in that the BOP did not allow her to take anything into prison. Her previous trial attorney, a court appointed counsel, Mr. Freeman was mistaken in that transcripts and many discoveries were NOT sent to the Petitioner, as the Government claimed (Pg. 20) (See exh). In fact, the discoveries that came to the BOP:

1. Some of the disks were "blank" and defective (See exh 3),

2. Inmates are unable to copy from the discs; can only reference exhibits (See Exh 8).

2. There were still many missing items, including but not limited to trial and sentencing transcripts, order of judgment, jury verdict (voir dire), walk-in prescriptions, invoices, register books which documented cash, credit card, etc... transactions, 3500 material of Dr. Cochran and Dr. Konakanchi, SUPPRESSED 3500 material of Dr. Imbernino and Peter J. Riccio, Dr. Haytmanek's file, pretrial proceedings, certain trial and sentencing discoveries, certain briefs and motions, video recordings request from the "Riccio's" pharmacies even if the request was orally to the prosecutors, Hellertown Pharmacy and Palmer Pharmacy discoveries, as stated in her email to her former court appointed attorney, Mr. Freeman (See Exh 4).

The Petitioner has a right to produce these discs to the Court to verify the many missing items that the Petitioner did not receive, as well as the defective discs which the Petitioner received.

While incarcerated, even Lasher's former appellate counsel, attorney Roger Stavis, did not provide her with trial transcripts and sentencing material, or even her appendix on direct appeal as the Government claimed (See Exh 4).

The Petitioner filed a civil action for negligence and malpractice against trial attorney Mr. Freeman and appellate attorney Mr. Roger Stavis (See Exh 5).

Although Lasher retained private counsel to fight state disciplinary proceedings (Government Ex B) - the fee was not paid by Lasher or family/friends, as the Government claimed; she did not have the funds to ask her counsel to obtain transcripts via PACER as the Government claimed. Her Nebraska pharmacist license was revoked due to the "conviction" and discrimination, which was wrongfully achieved due to the Government's witnesses purgeries, suppression, planting, and tampering of evidence by the prosecutors (a Brady Violation), and withheld evidence. Yet, others (white male pharmacists and technicians) who confessed to the "crime", including prostitution and theft of narcotics and other miscellaneous items from various pharmacies, were not punished by any state Board of Pharmacy while the Petitioner, an Asian female of Vietnamese descent was violated; she did not violate any governing pharmacy law, but rather sentenced to laws made-up by

the Government and their witnesses. The Chief of Medicine has sat on the decision since April 19, 2017, and did not sign off on the revocation until September 15, 2017, one week prior to the Government's deadline to the response of the Petitioner's motion 2255. The Petitioner's counsel told Petitioner in an email that the State's chief of medical Officer did not want to sign the recommendation from the hearing examiner (See Exh 6). He also stated that evidence are not relevant until the court says Conviction Reversed. Thus, the Petitioner believes the Government forced the chief to sign off on the revoke order. The Petitioner has appealed this revocation via a civil action so that she can produce the perjured, suppressed, planted, tampered, and withheld, evidence by the Government (See Exh 7). The Petitioner will expose the Government's corruption.

The trial is about the Petitioner, not her friends or family. The petitioner will not burden her friends or family with the cost of transcripts. The Petitioner utilized a gift from God to file the 2255 Motion, again the Government is wrong.

The Petitioner is also at a disadvantage in that Institution staff refused to print or make copies of legal work from inmate's legal discovery disk (See exh 8) Also, the Bureau of Prisons has lost many of Petitioner's mail and discs (See exh 9). Recently, the Bureau of Prisons' Education has not turned over any of the Petitioner's discs.

To date, the Petitioner was only allowed to view her discovery, such as the suppressed video recording and one of her discs, only a couple of hours a week, if at all.

With no transcript and missing discoveries, it is challenging with a concern of how can the Petitioner have a fair trial to win back her innocence? What is the Government afraid of? I believe the Government is afraid of being charged for framing the Petitioner, and so the Government would do anything to prevent the Petitioner from having a fair trial, even stopping her from obtaining transcripts. Transcripts the Petitioner seeks are needed to decide her motions. Due to her incarceration, no inmate has access to the internet and so they can not access PACER, as the Government claims. Because the Government framed the petitioner and violated the governing pharmacy law, the Government must pay for transcripts; it was the Government and its witnesses who did not act in good faith.

## CONCLUSION

. The Exhibit B submitted by the Government regarding the State of Nebraska withdrawal of licensure is due to the false evidence and testimonies provided to the Court. Whereby the licensing board was required to withdraw base on the actual conviction, that is currently under rightful and lawful attack.

. Because the government's suppressed AND tampered the video recordings, a Brady Violation of the 4th Amendment has occurred. "Brady requires that the government disclose material evidence favorable to a criminal defendant." Evidence is favorable if it is either exculpatory or impeaching. "A conviction must be reversed "upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. (quotation marks omitted). In this case, the video recordings proved the Petitioner's actual innocence in that

she followed the law, did not commit the crime, and was wrongly convicted due to the knowingly used perjured testimonies of the prosecutors' witnesses. Also, the Petitioner focused on work and was not watching cameras of the Hellertown Pharmacy and Palmer Pharmacy & Much More, as shown by the video recording; again contradicting the Prosecutors' witnesses testimonies. therefore, via the (suppressed) video recording and media records of the Petitioner's cell phone, the Petitioner can prove she was NOT supervising the "Riccio's pharmacies" via cameras or phones, as falsely testified by the prosecutors' witnesses. If not for these perjuries and the suppression of evidence, the Petitioner would not be convicted.

Also, the governing pharmacy law hold the petitioner harmless when she is not the pharmacist on duty. As Judge Buchwald mentioned, each pharmacist is responsible for his/her own license, a pharmacist can't shift blame onto another pharmacist (T.1258). Yet, she allowed the Government witnesses to shift blame onto the Petitioner, which is a violation of the pharmacy governing law. Only the State board could penalized the pharmacist on duty and pharmacy for non-compliance of regulations; this is not a criminal issues whereas Counsel allowed the topic of fraud in the Court.

Petitioner is asking the Court: How can the Petitioner be convicted for not breaking any pharmacy governing law, but rather be sentence to laws made up by the Government and their witnesses. Because the ruling and testimonies were a contradiction to the governing pharmacy law, the Petitioner's conviction must be vacated, set aside, or time-served.

To again emphasize, upon the first review after extensive litigating for possession the Petitioner noticed that the video recording was TAMPERED with. This further violation of the Petitioner's constitutional right, due to the video recording suppression and tampered with, the validity of a Brady Violation (exculpatory evidence) as well as prosecutorial misconduct occurred, the Petitioner therefore prays the Honorable court will grant her 2255 motion. To further emphasize, 9 DVDs remain suppressed.

"If the petitioner asserts his actual innocence of the underlying crime, he must show "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his petition." Calderon v. Thompson, supra, 523 U.S. at 559. Here the Petitioner has met this burden.

The evidential hearing is a means to prove not only the prosecution violation but also the proof of innocence to present evidence which contradicted the Government and its witnesses' testimonies. Thus, as a result of Brady violation and violation of due process, and with the profound and compelling facts and exhibits of evidence that clearly prove the conviction was wrongly achieved, the petitioner's conviction must be vacated, set aside, or time served, immediately.

Respectfully Submitted,                    Date:  October 12, 2017

Lena lasher

Lena lasher, Pro-Se
Register # 67662-054
Federal Correctional Institution
33 & 1/2 Pembroke Rd.
Danbury, CT 06811-3099

TABLE OF AUTHORITIES CITED

CASES

Bain v. US 30 LEd 849, 3/28/1887

Brady v. Maryland (1963) 373 US 83, 10L ed 2d 151, 83 S Ct 1194

Calderon v. Thompson, supra, 523 U.S. at 559

Carnesi v. US (US District Court NY 3/18/2013

Coker v. Georgia

Comestock v. McCrary

Cutter v. Petties

Demarco v United States 928 F. 2d 1074 (11th cir. 1991)

Estelle v. Gamble

Giglio v. U.S. 150, 154 (1992) Napue, 360 U.S. at 271

Gordon v. United States 97 LED 447, 344 US 414

Hale, Marshall, Pennsylvania 2017

Haskell v. Superintendent Greene SCI; 2017 BL 266640, 3d Cir., No. 15-3427, 8/1/17

Hathaway v. Coughlin

Honeycutt v. United STates, U.S., No. 16-142, 6/5/17

Johnson v. US 135 S Ct 2551 (2015)

Lorenzo v. SEC (No. 15-1202) (D.C. Cir. Sept. 29, 2017)

McQuiggin v. Perkins, U.S. Supreme Court 2013

McNally court 383 F.2d. 709 (1967)

Mooney v. Holohan, 294 U.S. 103 (1935)

Moore v. Sec'y Pa, Dept of Corr., 3d Cir., 2016 BL 49448

Napue, 360 U.S. at 271

Olsen, Carl v. Eric Holder 610 F. Supp. 2 985; 2009 U.S. Dist. LEXIS 35300

Priest v Cupp

Ricketts v. Ciccone

Satterfield v. Dist. Attorney Phila., 2017 BL 339627, 3d Cir., No. 15-2190, 9/26/17

Schuetzle v. Vogel

Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L.Ed. 2d 286 (1999)

Superintendent Greene SCI, 2017 BL 266640, 3d Cir., No. 15-3427, 8/1/17

Syed, Adnan Maryland (2016)

US v. Kevin Lamont Brewer 766F. 3d 884; 2014 U.S. App LEXIS 17454 No. 13-1261 (8th Circuit 9/10/14)

US v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004)

US v. Walter, 2017 BL 303067, 75h Cir., 16-1325 Nos. 16-1209, 8/29/17

Youngblood v. West Virginia, 547 U.S. 867, 870, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006) (quotation marks omitted)

APPENDIX/EXHIBITS

A. S2002 Legislation - See Exhibit CC of 2255 Motion

B. PA 27 Governing Pharmacy Law - See Exhibit J of 2255 Motion

C. Controlled Substance Act (CSA)

D. Dr. Konakanchi's Dr. Survey (faxes) - See Exh U of 2255 Motion

E. Attorney Freeman and Attorney Stavis' emails

F. PIC Question

G. Recall the Mandate - See Exhibit M of 2255 Motion

H. FOIA/PA's letter of 11/7/2016 and 7/11/2017

I. Government's letter of 3/3/17

J. Government's letter of 4/25/17

K. Ex AG Preet Bharara's letter of 3/10/17

L. Trial Judge's denial the subpoena of video recordings

M. Unredacted write-ups

N. Work Schedules

O. FOIA/PA's letter of 1/6/2017 - See Exhibit 15 of 2255 Motion

P. Dr. Cochran's statements

Q. Boston Globe's article

R. Petition for Reconsideration of Forfeiture Based on the New Supreme Court's Opinion of

  Honeycutt v. United States

S. Pg. 15 of Petitioner's direct appeal

T. Civil judgments

U. Peter J. Riccio $1.85 million bonus

V. Peter J. Riccio's cheated the Petitioner out of her pay

W. Laura Hishmeh's forgeries

X. District of Connecticut's letter

Y. 8th Amendment Violation

Z. Legal Secretary Apprenticeship

1. Lasher can not work with dust, chemicals or irritants

2. Fellow inmates' medical issues

3. Blank and defective discs

4. Request of missing items

5. Civil actions against Attorney Freeman and Attorney Stavis

6. Attorney Boucher's email (Nebraska licensing defense attorney)

7. Civil action against Nebraska Board of Pharmacy

8. Letter from the Bureau of Prisons in regard to discovery disc

9. Loss of items

USDS FND P3

Reina Kasner
Register #67662-054
Federal Correctional Institution
331/2 Pembroke Rd.
Danbury, CT 06811-3099

US DNA

Crm DNA US

⇔67662-054⇔
Clerk Of The Court
US District Courthouse
500 Pearl ST
212-8050136
NEW YORK, NY 10007
United States

FEDERAL CORRECTIONAL INSTITUTION DANBURY
33 1/2 PEMBROKE ROAD, DANBURY, C.T. 06811

10/19-17

OCT 23 2017

1 M . 1

